Matthew L. Sharp, Ltd.
Nevada Bar No. 4746
MATTHEW L. SHARP, LTD.
432 Ridge Street
Reno, NV  89501
(775) 324-1500
matt@mattsharplaw.com
*Attorneys for Plaintiff*

# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

|  |  |
|---|---|
| RONALD PEARL, derivatively on behalf of FLUX POWER HOLDINGS, INC., | Case No: |
| Plaintiff, | |
| v. | **VERIFIED SHAREHOLDER DERIVATIVE COMPLAINT** |
| RONALD F. DUTT, CHARLES A. SCHEIWE, MICHAEL JOHNSON, MARK LEPOSKY, DALE T. ROBINETTE, LISA WALTERS-HOFFERT, and CHEEMIN BO-LINN, | |
| Defendants, | **JURY TRIAL DEMANDED** |
| and, | |
| FLUX POWER HOLDINGS, INC., | |
| Nominal Defendant. | |

Plaintiff Ronald Pearl ("Plaintiff"), by and through his undersigned counsel, derivatively on behalf of Flux Power Holdings, Inc. ("Flux Power" or the "Company"), submits this Verified Shareholder Derivative Complaint (the

///

"Complaint"). Plaintiff's allegations are based upon his personal knowledge as to himself and his own acts, and upon information and belief, developed from the investigation and analysis by Plaintiff's counsel, including a review of publicly available information, including filings by the Company with the U.S. Securities and Exchange Commission ("SEC"), press releases, news reports, analyst reports, investor conference transcripts, publicly available filings in lawsuits, and matters of public record.

## NATURE OF THE ACTION

1.     This is a shareholder derivative action brought in the right, and for the benefit, of the Company against certain of its officers and directors seeking to remedy the Individual Defendants' (defined below) violations of law that has occurred from November 11, 2022 through to the present (the "Relevant Period") and which has caused substantial harm to the Company.

## JURISDICTION

2.     This Court has subject-matter jurisdiction over this action pursuant to 28 U.S.C. § 1332 as complete diversity exists between the Parties and the amount in controversy exceeds $75,000, exclusive of interest and costs. This Court has supplemental jurisdiction over the state law claims asserted herein pursuant to 28 U.S.C. §1367(a). This action is not a collusive one to confer jurisdiction on a court of the United States which it would not otherwise have.

3.     This Court has personal jurisdiction over each defendant named herein because each defendant is either a corporation that conducts business in and maintains operations in this District or is an individual who has sufficient minimum contacts with this District to render the exercise of jurisdiction by the courts of this District permissible under traditional notions of fair play and substantial justice.

4.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) because: (i) one or more of the defendants either resides in or maintains executive offices in

this District; (ii) a substantial portion of the transactions and wrongs complained of herein, including defendants' primary participation in the wrongful acts detailed herein and aiding and abetting and conspiracy in violation of fiduciary duties owed to the Company, occurred in this District; (iii) defendants have received substantial compensation in this District by doing business here and engaging in numerous activities that had an effect in this District; and (iv) defendants have otherwise purposefully availed themselves of this District through being listed on the Nasdaq in this District, issuing false statements in this District, and maintaining retail stores in this District.

5.      In connection with the acts, transactions, and conduct alleged herein, the Individual Defendants directly and indirectly used the means and instrumentalities of interstate commerce, including the United States mail, interstate telephone communications, and the facilities of a national securities exchange.

## THE PARTIES

### Plaintiff

6.      ***Plaintiff Ronald Pearl*** ("Plaintiff") is, and was at all relevant times, a shareholder of the Company and presently owns shares of the Company's common stock as of the date of the filing of this complaint. Plaintiff will hold shares of the Company throughout the duration of this derivative action. Plaintiff will fairly and adequately represent the interests of the shareholders in enforcing the rights of the corporation. Plaintiff is a citizen of Arizona.

### Nominal Defendant

7.      ***Nominal Defendant Flux Power*** is a Nevada corporation with its principal executive offices located at 2685 S. Melrose Drive, Vista, California 24011. The Company's stock trades on the Nasdaq Stock Exchange under the ticker symbol "FLUX."

///

VERIFIED SHAREHOLDER DERIVATIVE COMPLAINT

**Director Defendants**

8.      ***Defendant Ronald F. Dutt*** ("Dutt") is the Company's Chief Executive Officer ("CEO") and director, having held these roles since March 19, 2014. Defendant Dutt also became the Company's Chairman on June 28, 2019. Upon information and belief, Defendant Dutt is a citizen of California.

9.      ***Defendant Michael Johnson*** ("Johnson") has served as a Company director since July 12, 2012 when the Company was incorporated. Upon information and belief, Defendant Johnson is a citizen of Texas.

10.      ***Defendant Mark Leposky*** ("Leposky") has served as a Company director since April 18, 2024. Upon information and belief, Defendant Leposky is a citizen of California.

11.      ***Defendant Dale T. Robinette*** ("Robinette") has served as a Company director since June 28, 2019. Upon information and belief, Defendant Robinette is a citizen of California.

12.      ***Defendant Lisa Walters-Hoffert*** ("Walters-Hoffert") has served as a Company director since June 28, 2019. Upon information and belief, Defendant Walters-Hoffert is a citizen of California.

13.      ***Defendant Cheemin Bo-Linn*** ("Bo-Linn") served as a Company director from January 14, 2022 through to the Company's annual meeting held on April 18, 2024. Upon information and belief, Defendant Bo-Linn is a citizen of California.

14.      Defendants Dutt, Johnson, Leposky, Robinette, Walters-Hoffert, and Bo-Linn are collectively referred to herein as the "Director Defendants."

**Officer Defendants**

15.      ***Defendant Charles A. Scheiwe*** ("Scheiwe") served as the Company's Chief Financial Officer ("CFO") from July 2018 through to March 1, 2024. Upon information and belief, Defendant Scheiwe is a citizen of California.

VERIFIED SHAREHOLDER DERIVATIVE COMPLAINT

16.    Defendant Scheiwe and Defendant Dutt are collectively referred to herein as the "Officer Defendants."

17.    The Director Defendants along with the Officer Defendants are collectively referred to herein as the "Individual Defendants."

## BACKGROUND

18.    Flux Power "designs, manufactures, and sells advanced lithium-ion energy storage solutions for electrification of a range of industrial and commercial sectors including material handling, airport ground support equipment ("GSE"), and stationary energy storage."

## MATERIALLY FALSE AND/OR MISLEADING STATEMENTS

19.    On November 10, 2022, Flux Power filed with the SEC its quarterly report on Form 10-Q for the period ended September 30, 2022 (the "1Q23 Report"). Attached to the 1Q23 Report were certifications pursuant to the Sarbanes-Oxley Act of 2002 ("SOX") signed by Defendants Dutt and Scheiwe attesting to the accuracy of financial reporting, the disclosure of any material changes to the Company's internal control over financial reporting and the disclosure of all fraud.

20.    The 1Q23 Report stated the following regarding the Company's internal controls:

Under the supervision and with the participation of our management, including our principal executive officer and principal financial officer, as of the end of the period covered by this report, we conducted an evaluation of the effectiveness of the design and operation of our disclosure controls and procedures, as defined in Rules 13a-15(e) and 15d-15(e) under the Securities Act of 1934. Our disclosure controls and procedures are designed to provide reasonable assurance that the information required to be included in our SEC reports is recorded, processed, summarized and reported within the time periods specified in SEC rules and forms, relating to the Company, including our consolidated subsidiaries, and was made known to them by others within those entities, particularly during the period when this report was being prepared. Based upon that evaluation, our Chief Executive

VERIFIED SHAREHOLDER DERIVATIVE COMPLAINT

Officer and Chief Financial Officer have concluded that our disclosure controls and procedures were not effective as of September 30, 2022 because of the material weaknesses identified in our internal controls over financial reporting.

The management of the Company is responsible for establishing and maintaining adequate internal control over financial reporting. The Company's internal control over financial reporting is a process designed under the supervision of the Company's principal executive officer and principal financial officer to provide reasonable assurance regarding the reliability of financial reporting and the preparation of the Company's financial statements for external purposes in accordance with generally accepted accounting principles. Because of its inherent limitations, internal control over financial reporting may not prevent or detect misstatements. All internal control systems, no matter how well designed, have inherent limitations. Therefore, even those systems determined to be effective can provide only reasonable assurances with respect to financial statement preparation and presentation. Additionally, projections of any evaluation of effectiveness to future periods are subject to the risk that controls may become inadequate because of changes in conditions, or that the degree of compliance with the policies or procedures may deteriorate.

As described in the Company's 10-K for the fiscal year ended June 30, 2022, management assessed the effectiveness of the Company's internal control over financial reporting and based on such assessment, management concluded that as of June 30, 2022, our internal control over financial reporting was not effective due to material weakness related to ineffective oversight of the Company's internal control over financial reporting and lack of sufficient review and approval of the underlying data used in the calculation of warranty reserve. During the quarter ended September 30, 2022, we have implemented additional control procedures to strengthen the oversight of the Company's internal control over financial reporting through review and sign off by the senior management of all significant assumptions and estimates being used and the underlying data used in producing financial schedules/estimates and financial reporting. We have also added a second level of review and approval for all manual journal entries for significant estimates and assumptions made by management. We plan to continue to assess our internal controls and control procedures and

VERIFIED SHAREHOLDER DERIVATIVE COMPLAINT

intend to take further action as necessary or appropriate to address any other matters we identify or are brought to our attention.

21.    The above-referenced statement was materially false and misleading at the time it was made because, as would later be revealed, the Company understated its issues with its internal controls which allowed the Company to issue false and misleading financial statements, as described herein.

22.    The 1Q23 Report provided the following, in pertinent part, regarding the Company's financials:

///

///

///

///

///

///

///

///

///

///

///

///

///

///

///

///

///

///

///

VERIFIED SHAREHOLDER DERIVATIVE COMPLAINT

Item 1. Financial Statements

**FLUX POWER HOLDINGS, INC.**
**CONDENSED CONSOLIDATED BALANCE SHEETS**

|  | September 30, 2022 (Unaudited) |
|---|---|
| **ASSETS** | |
| Current assets: | |
| Cash | $ 306,000 |
| Accounts receivable | 11,596,000 |
| Inventories, net | 18,878,000 |
| Other current assets | 1,308,000 |
| Total current assets | 32,088,000 |
| Right of use asset | 2,558,000 |
| Property, plant and equipment, net | 1,758,000 |
| Other assets | 42,000 |
| **Total assets** | $ 36,446,000 |
| **LIABILITIES AND STOCKHOLDERS' EQUITY** | |
| Current liabilities: | |
| Accounts payable | $ 13,505,000 |
| Accrued expenses | 2,228,000 |
| Line of credit | 5,651,000 |
| Deferred revenue | 347,000 |
| Customer deposits | 10,000 |
| Vehicle lease payable, current portion | 13,000 |
| Office lease payable, current portion | 523,000 |
| Accrued interest | 2,000 |
| Total current liabilities | 22,279,000 |
| Office lease payable, less current portion | 2,222,000 |
| Vehicle lease payable, less current portion | 55,000 |
| **Total liabilities** | 24,556,000 |
| Stockholders' equity: | |
| Preferred stock, $0.001 par value; 500,000 shares authorized; none issued and outstanding | - |
| Common stock, $0.001 par value; 30,000,000 shares authorized; 15,998,356 and 15,996,658 shares issued and outstanding at September 30, 2022 and June 30, 2022, respectively | 16,000 |
| Additional paid-in capital | 95,827,000 |
| Accumulated deficit | (83,953,000) |
| Total stockholders' equity | 11,890,000 |
| **Total liabilities and stockholders' equity** | $ 36,446,000 |

The accompanying notes are an integral part of these condensed consolidated financial statements.

**FLUX POWER HOLDINGS, INC.**
**CONDENSED CONSOLIDATED STATEMENTS OF OPERATIONS**
**(Unaudited)**

|  | Three Months Ended September 30, 2022 |
|---|---|
| Revenues | $ 17,840,000 |
| Cost of sales | 13,892,000 |
| Gross profit | 3,948,000 |
| Operating expenses: | |
| Selling and administrative | 4,536,000 |
| Research and development | 1,223,000 |
| Total operating expenses | 5,759,000 |
| Operating loss | (1,811,000) |
| Interest expense | (328,000) |
| Net loss | $ (2,139,000) |
| Net loss per share - basic and diluted | $ (0.13) |
| Weighted average number of common shares outstanding - basic and diluted | 15,997,296 |

The accompanying notes are an integral part of these condensed consolidated financial statements.

23.    The financial statements provided *supra* were materially false and misleading because, as would be later revealed, the Company had overstated its inventory, gross profit, current assets, and total assets, and understated cost of sales and net loss, thus rendering its reported figures materially false and misleading which led to the Company informing the public that these figures could "no longer be relied upon."

VERIFIED SHAREHOLDER DERIVATIVE COMPLAINT

24. On February 9, 2023, Flux Power filed with the SEC its quarterly report on Form 10-Q for the period ended December 31, 2022 (the "2Q23 Report"). Attached to the 2Q23 Report were certifications pursuant to SOX signed by Defendants Dutt and Scheiwe attesting to the accuracy of financial reporting, the disclosure of any material changes to the Company's internal control over financial reporting and the disclosure of all fraud.

25. The 2Q23 Report stated the following regarding the Company's internal controls:

> Under the supervision and with the participation of our management, including our principal executive officer and principal financial officer, as of the end of the period covered by this report, we conducted an evaluation of the effectiveness of the design and operation of our disclosure controls and procedures, as defined in Rules 13a-15(e) and 15d-15(e) under the Securities Act of 1934. Our disclosure controls and procedures are designed to provide reasonable assurance that the information required to be included in our SEC reports is recorded, processed, summarized and reported within the time periods specified in SEC rules and forms, relating to the Company, including our consolidated subsidiaries, and was made known to them by others within those entities, particularly during the period when this report was being prepared. Based upon that evaluation, our Chief Executive Officer and Chief Financial Officer have concluded that our disclosure controls and procedures were effective as of December 31, 2022.
>
> The management of the Company is responsible for establishing and maintaining adequate internal control over financial reporting. The Company's internal control over financial reporting is a process designed under the supervision of the Company's principal executive officer and principal financial officer to provide reasonable assurance regarding the reliability of financial reporting and the preparation of the Company's financial statements for external purposes in accordance with generally accepted accounting principles. Because of its inherent limitations, internal control over financial reporting may not prevent or detect misstatements. All internal control systems, no matter how well designed, have inherent limitations. Therefore, even those systems determined to be effective can provide only reasonable assurances with

respect to financial statement preparation and presentation. Additionally, projections of any evaluation of effectiveness to future periods are subject to the risk that controls may become inadequate because of changes in conditions, or that the degree of compliance with the policies or procedures may deteriorate.

As described in the Company's 10-K for the fiscal year ended June 30, 2022, management assessed the effectiveness of the Company's internal control over financial reporting and based on such assessment, management concluded that as of June 30, 2022, our internal control over financial reporting was not effective due to material weakness related to ineffective oversight of the Company's internal control over financial reporting and lack of sufficient review and approval of the underlying data used in the calculation of warranty reserve. During the six months ended December 31, 2022, we have implemented additional control procedures to strengthen the oversight of the Company's internal control over financial reporting through review and sign off by the senior management of all significant assumptions and estimates being used and the underlying data used in producing financial schedules/estimates and financial reporting. We have also added a second level of review and approval for all manual journal entries for significant estimates and assumptions made by management. Based on the foregoing, we believe we have remediated the material weaknesses. We plan to continue to assess our internal controls and control procedures and intend to take further action as necessary or appropriate to address any other matters we identify or are brought to our attention.

26.     The above-referenced statement was materially false and misleading at the time it was made because, as would later be revealed, the Company understated its issues with its internal controls which allowed the Company to issue false and misleading financial statements, as described herein.

27.     The 2Q23 Report provided the following, in pertinent part, regarding the Company's financials:

///

///

///

10

VERIFIED SHAREHOLDER DERIVATIVE COMPLAINT

**FLUX POWER HOLDINGS, INC.**
**CONDENSED CONSOLIDATED BALANCE SHEETS**

|  | December 31, 2022 (Unaudited) |
|---|---|
| **ASSETS** | |
| Current assets: | |
| Cash | $ 157,000 |
| Accounts receivable | 10,487,000 |
| Inventories, net | 19,507,000 |
| Other current assets | 864,000 |
| Total current assets | 31,015,000 |
| Right of use assets | 2,601,000 |
| Property, plant and equipment, net | 1,561,000 |
| Other assets | 115,000 |
| Total assets | $ 35,292,000 |
| **LIABILITIES AND STOCKHOLDERS' EQUITY** | |
| Current liabilities: | |
| Accounts payable | $ 12,797,000 |
| Accrued expenses | 2,298,000 |
| Line of credit | 6,811,000 |
| Deferred revenue | 81,000 |
| Customer deposits | 29,000 |
| Finance lease payable, current portion | 64,000 |
| Office lease payable, current portion | 542,000 |
| Accrued interest | 1,000 |
| Total current liabilities | 22,623,000 |
| Office lease payable, less current portion | 2,079,000 |
| Finance lease payable, less current portion | 172,000 |
| Total liabilities | 24,874,000 |
| Stockholders' equity: | |
| Preferred stock, $0.001 par value; 500,000 shares authorized; none issued and outstanding | – |
| Common stock, $0.001 par value; 30,000,000 shares authorized; 16,029,478 and 15,996,658 shares issued and outstanding at December 31, 2022 and June 30, 2022, respectively | 16,000 |
| Additional paid-in capital | 96,036,000 |
| Accumulated deficit | (85,634,000) |
| Total stockholders' equity | 10,418,000 |
| Total liabilities and stockholders' equity | $ 35,292,000 |

The accompanying notes are an integral part of these condensed consolidated financial statements.

**FLUX POWER HOLDINGS, INC.**
**CONDENSED CONSOLIDATED STATEMENTS OF OPERATIONS**
**(Unaudited)**

|  | Three Months Ended December 31, | | |
|---|---|---|---|
|  | 2022 | 2021 | |
| Revenues | $ 17,158,000 | $ 7,690,000 | $ |
| Cost of sales | 13,050,000 | 6,648,000 | |
| Gross profit | 4,108,000 | 1,042,000 | |
| Operating expenses: | | | |
| Selling and administrative | 4,250,000 | 4,000,000 | |
| Research and development | 1,162,000 | 2,088,000 | |
| Total operating expenses | 5,412,000 | 6,088,000 | |
| Operating loss | (1,304,000) | (5,046,000) | |
| Other income | 8,000 | – | |
| Interest expense | (385,000) | (31,000) | |
| Net loss | $ (1,681,000) | $ (5,077,000) | $ |
| Net loss per share - basic and diluted | $ (0.10) | $ (0.32) | $ |
| Weighted average number of common shares outstanding - basic and diluted | 16,020,183 | 15,987,902 | |

The accompanying notes are an integral part of these condensed consolidated financial statements.

28.    The financial statements provided *supra* were materially false and misleading because, as would be later revealed, the Company had overstated its inventory, gross profit, current assets, and total assets, and understated cost of sales and net loss, thus rendering its reported figures materially false and misleading which led to the Company informing the public that these figures could "no longer be relied upon."

VERIFIED SHAREHOLDER DERIVATIVE COMPLAINT

29.    On May 11, 2023, Flux Power filed with the SEC its quarterly report on Form 10-Q for the period ended March 31, 2023 (the "3Q23 Report"). Attached to the 2Q23 Report were certifications pursuant to SOX signed by Defendants Dutt and Scheiwe attesting to the accuracy of financial reporting, the disclosure of any material changes to the Company's internal control over financial reporting and the disclosure of all fraud.

30.    The 3Q23 Report stated the following regarding the Company's internal controls:

> Under the supervision and with the participation of our management, including our principal executive officer and principal financial officer, as of the end of the period covered by this report, we conducted an evaluation of the effectiveness of the design and operation of our disclosure controls and procedures, as defined in Rules 13a-15(e) and 15d-15(e) under the Securities Act of 1934. Our disclosure controls and procedures are designed to provide reasonable assurance that the information required to be included in our SEC reports is recorded, processed, summarized and reported within the time periods specified in SEC rules and forms, relating to the Company, including our consolidated subsidiaries, and was made known to them by others within those entities, particularly during the period when this report was being prepared. Based upon that evaluation, our Chief Executive Officer and Chief Financial Officer have concluded that our disclosure controls and procedures were effective as of March 31, 2023.

> The management of the Company is responsible for establishing and maintaining adequate internal control over financial reporting. The Company's internal control over financial reporting is a process designed under the supervision of the Company's principal executive officer and principal financial officer to provide reasonable assurance regarding the reliability of financial reporting and the preparation of the Company's financial statements for external purposes in accordance with generally accepted accounting principles. Because of its inherent limitations, internal control over financial reporting may not prevent or detect misstatements. All internal control systems, no matter how well designed, have inherent limitations. Therefore, even those systems determined to be effective can provide only reasonable assurances with

VERIFIED SHAREHOLDER DERIVATIVE COMPLAINT

respect to financial statement preparation and presentation. Additionally, projections of any evaluation of effectiveness to future periods are subject to the risk that controls may become inadequate because of changes in conditions, or that the degree of compliance with the policies or procedures may deteriorate.

As described in the Company's 10-K for the fiscal year ended June 30, 2022, management assessed the effectiveness of the Company's internal control over financial reporting and based on such assessment, management concluded that as of June 30, 2022, our internal control over financial reporting was not effective due to material weakness related to ineffective oversight of the Company's internal control over financial reporting and lack of sufficient review and approval of the underlying data used in the calculation of warranty reserve. We believe we have remediated the material weaknesses. We plan to continue to assess our internal controls and control procedures and intend to take further action as necessary or appropriate to address any other matters we identify or are brought to our attention.

31.    The above-referenced statement was materially false and misleading at the time it was made because, as would later be revealed, the Company understated its issues with its internal controls which allowed the Company to issue false and misleading financial statements, as described herein.

32.    The 3Q23 Report provided the following, in pertinent part, regarding the Company's financials:

///

///

///

///

///

///

///

///

13

**FLUX POWER HOLDINGS, INC.**
**CONDENSED CONSOLIDATED BALANCE SHEETS**

| | March 31, 2023 (Unaudited) |
|---|---|
| **ASSETS** | |
| Current assets: | |
| Cash | $ 790,000 |
| Accounts receivable | 9,853,000 |
| Inventories, net | 20,959,000 |
| Other current assets | 775,000 |
| Total current assets | 32,377,000 |
| Right of use assets | 3,035,000 |
| Property, plant and equipment, net | 1,724,000 |
| Other assets | 119,000 |
| Total assets | $ 37,255,000 |
| **LIABILITIES AND STOCKHOLDERS' EQUITY** | |
| Current liabilities: | |
| Accounts payable | $ 10,827,000 |
| Accrued expenses | 2,604,000 |
| Line of credit | 10,491,000 |
| Deferred revenue | — |
| Customer deposits | 135,000 |
| Finance lease payable, current portion | 140,000 |
| Office lease payable, current portion | 616,000 |
| Accrued interest | 3,000 |
| Total current liabilities | 24,816,000 |
| Office lease payable, less current portion | 2,223,000 |
| Finance lease payable, less current portion | 311,000 |
| Total liabilities | 27,350,000 |
| Stockholders' equity: | |
| Preferred stock, $0.001 par value; 500,000 shares authorized; none issued and outstanding | — |
| Common stock, $0.001 par value; 30,000,000 shares authorized; 16,156,432 and 15,996,658 shares issued and outstanding at March 31, 2023 and June 30, 2022, respectively | 16,000 |
| Additional paid-in capital | 96,968,000 |
| Accumulated deficit | (87,079,000) |
| Total stockholders' equity | 9,905,000 |
| Total liabilities and stockholders' equity | $ 37,255,000 |

**FLUX POWER HOLDINGS, INC.**
**CONDENSED CONSOLIDATED STATEMENTS OF OPERATIONS**
**(Unaudited)**

| | Three Months Ended March 31, | |
|---|---|---|
| | 2023 | 2022 |
| Revenues | $ 15,087,000 | $ 13,177,000 |
| Cost of sales | 10,368,000 | 11,257,000 |
| Gross profit | 4,719,000 | 1,920,000 |
| Operating expenses: | | |
| Selling and administrative | 4,724,000 | 3,904,000 |
| Research and development | 1,182,000 | 1,713,000 |
| Total operating expenses | 5,906,000 | 5,617,000 |
| Operating loss | (1,187,000) | (3,697,000) |
| Other income | | |
| Interest expense | (258,000) | (52,000) |
| Net loss | (1,445,000) | (3,749,000) |
| Net loss per share - basic and diluted | $ (0.09) | $ (0.23) |
| Weighted average number of common shares outstanding - basic and diluted | 16,048,054 | 15,988,926 |

The accompanying notes are an integral part of these condensed consolidated financial statements.

33.     The financial statements provided *supra* were materially false and misleading because, as would be later revealed, the Company had overstated its inventory, gross profit, current assets, and total assets, and understated cost of sales and net loss, thus rendering its reported figures materially false and misleading which led to the Company informing the public that these figures could "no longer be relied upon."

///

34.    On September 21, 2023, Flux Power filed with the SEC its annual report on Form 10-K for the fiscal year ended June 30, 2023 (the "2023 Annual Report"). The 2023 Annual Report was reviewed, approved, and signed by Defendants Dutt, Scheiwe, Johnson, Bo-Linn, Walters-Hoffert, and Robinette.

35.    Attached to the 2023 Annual Report were certifications pursuant to SOX signed by Defendants Dutt and Scheiwe attesting to the accuracy of financial reporting, the disclosure of any material changes to the Company's internal control over financial reporting and the disclosure of all fraud.

36.    The 2023 Annual Report contained the following statement regarding the Company's internal controls:

> Under the supervision and with the participation of our management, including our principal executive officer and principal financial officer, as of the end of the period covered by this report, we conducted an evaluation of the effectiveness of the design and operation of our disclosure controls and procedures, as defined in Rules 13a-15(f) and 15d-15(f) under the Securities Act of 1934. Our disclosure controls and procedures are designed to provide reasonable assurance that the information required to be included in our SEC reports is recorded, processed, summarized and reported within the time periods specified in SEC rules and forms, relating to the Company, including our consolidated subsidiaries, and was made known to them by others within those entities, particularly during the period when this report was being prepared. Based upon that evaluation, our Chief Executive Officer and Chief Financial Officer have concluded that our disclosure controls and procedures were not effective as of June 30, 2023 because of the material weakness identified in our internal controls over financial reporting.

37.    The 2023 Annual Report included a management report on internal control over financial reporting, giving greater detail to the internal control weakness described above. It stated the following:

> Management of the Company is responsible for establishing and maintaining adequate internal control over financial reporting. The Company's internal control over financial reporting is a process

designed under the supervision of the Company's principal executive officer and principal financial officer to provide reasonable assurance regarding the reliability of financial reporting and the preparation of the Company's financial statements for external purposes in accordance with generally accepted accounting principles. Because of its inherent limitations, internal control over financial reporting may not prevent or detect misstatements. All internal control systems, no matter how well designed, have inherent limitations. Therefore, even those systems determined to be effective can provide only reasonable assurances with respect to financial statement preparation and presentation. Additionally, projections of any evaluation of effectiveness to future periods are subject to the risk that controls may become inadequate because of changes in conditions, or that the degree of compliance with the policies or procedures may deteriorate.

Under the supervision of management, including our Chief Executive Officer and our Chief Financial Officer, we conducted an evaluation of the effectiveness of our internal control over financial reporting based on the framework in Internal Control - Integrated Framework issued by the Committee of Sponsoring Organizations of the Treadway Commission (2013 framework) and subsequent guidance prepared by the Commission specifically for smaller public companies as of June 30, 2023. Based on that evaluation, our management concluded that our internal control over financial reporting was not effective as of June 30,2023 due to an identified material weakness as a result of not having sufficient personnel resources with technical accounting expertise related to certain aspects of the financial reporting process. Until such time as we could have additional resources with such level of technical accounting expertise, management intends to implement measures designed to improve our internal control over financial reporting to remediate material weaknesses, including the use of third-party consultants and accounting experts.

This Annual Report on Form 10-K does not include an attestation report of the Company's independent registered public accounting firm regarding the effectiveness of the Company's internal control over financial reporting, as such report is not required due to the Company's status as a smaller reporting company.

///

VERIFIED SHAREHOLDER DERIVATIVE COMPLAINT

38.     The above-referenced statement was materially false and misleading at the time it was made because, as would later be revealed, the Company understated its issues with its internal controls which allowed the Company to issue false and misleading financial statements, as described herein.

39.     The 2023 Annual Report provided the following, in pertinent part, regarding the Company's financials:

///

///

///

///

///

///

///

///

///

///

///

///

///

///

///

///

///

///

///

///

///

VERIFIED SHAREHOLDER DERIVATIVE COMPLAINT

**FLUX POWER HOLDINGS, INC.**
**CONSOLIDATED BALANCE SHEETS**

| | June 30, 2023 |
|---|---|
| **ASSETS** | |
| Current assets: | |
| Cash | $ 2,379,000 |
| Accounts receivable | 1,649,000 |
| Inventories, net | 18,996,000 |
| Other current assets | 918,000 |
| Total current assets | 30,942,000 |
| Right of use asset | 2,854,000 |
| Property, plant and equipment, net | 1,789,000 |
| Other assets | 120,000 |
| Total assets | $ 35,705,000 |
| **LIABILITIES AND STOCKHOLDERS' EQUITY** | |
| Current liabilities: | |
| Accounts payable | $ 9,735,000 |
| Accrued expenses | 3,181,000 |
| Revolving line of credit | 9,912,000 |
| Deferred revenue | 131,000 |
| Customer deposits | 82,000 |
| Finance lease payable, current portion | 143,000 |
| Office lease payable, current portion | 644,000 |
| Accrued interest | 2,000 |
| Total current liabilities | 23,830,000 |
| Long term liabilities: | |
| Finance lease payable, less current portion | 273,000 |
| Office lease payable, less current portion | 2,055,000 |
| Total liabilities | 26,158,000 |
| Stockholders' equity: | |
| Preferred stock, $0.001 par value; 500,000 shares authorized; none issued and outstanding | - |
| Common stock, $0.001 par value; 30,000,000 shares authorized; 16,462,215 and 15,996,658 shares issued and outstanding at June 30, 2023 and June 30, 2022, respectively | 16,000 |
| Additional paid-in capital | 98,086,000 |
| Accumulated deficit | (88,555,000) |
| Total stockholders' equity | 9,547,000 |
| Total liabilities and stockholders' equity | $ 35,705,000 |

The accompanying notes are an integral part of these consolidated financial statements.

**FLUX POWER HOLDINGS, INC.**
**CONSOLIDATED STATEMENTS OF OPERATIONS**

| | Years ended June 30, 2023 | |
|---|---|---|
| Revenues | $ 66,337,000 | $ |
| Cost of sales | 49,237,000 | |
| Gross profit | 17,100,000 | |
| Operating expenses: | | |
| Selling and administrative | 17,620,000 | |
| Research and development | 4,890,000 | |
| Total operating expenses | 22,510,000 | |
| Operating loss | (5,410,000) | |
| Other income (expense): | | |
| Other income | 8,000 | |
| Interest expense | (1,339,000) | |
| Net loss | $ (6,741,000) | $ |
| Net loss per share - basic and diluted | $ (0.42) | $ |
| Weighted average number of common shares outstanding - basic and diluted | 16,055,256 | |

The accompanying notes are an integral part of these consolidated financial statements.

F-3

40.     The financial statements provided *supra* were materially false and misleading because, as would be later revealed, the Company had overstated its inventory, gross profit, current assets, and total assets, and understated cost of sales and net loss, thus rendering its reported figures materially false and misleading

VERIFIED SHAREHOLDER DERIVATIVE COMPLAINT

which led to the Company informing the public that these figures could "no longer be relied upon."

41.    On November 9, 2023, Flux Power filed with the SEC its quarterly report on Form 10-Q for the period ended September 30, 2023 (the "1Q24 Report"). Attached to the 1Q24 Report were certifications pursuant to SOX signed by Defendants Dutt and Scheiwe attesting to the accuracy of financial reporting, the disclosure of any material changes to the Company's internal control over financial reporting and the disclosure of all fraud.

42.    The 1Q24 Report contained the following statement regarding the Company's internal controls:

> Under the supervision of management, including our Chief Executive Officer and our Chief Financial Officer, we conducted an evaluation of the effectiveness of our internal control over financial reporting based on the framework in Internal Control - Integrated Framework issued by the Committee of Sponsoring Organizations of the Treadway Commission (2013 framework) and subsequent guidance prepared by the Commission specifically for smaller public companies as of September 30, 2023. Based on that evaluation, our management concluded that our internal control over financial reporting was not effective as of September 30, 2023 due to an identified material weakness as a result of not having sufficient personnel resources with technical accounting expertise related to certain aspects of the financial reporting process. Management intends to implement measures designed to improve our internal control over financial reporting to remediate material weaknesses, including the use of third-party consultants and accounting experts.
>
> Management of the Company is responsible for establishing and maintaining adequate internal control over financial reporting. The Company's internal control over financial reporting is a process designed under the supervision of the Company's principal executive officer and principal financial officer to provide reasonable assurance regarding the reliability of financial reporting and the preparation of the Company's financial statements for external purposes in accordance with generally accepted accounting principles. Because of its inherent

limitations, internal control over financial reporting may not prevent or detect misstatements. All internal control systems, no matter how well designed, have inherent limitations. Therefore, even those systems determined to be effective can provide only reasonable assurances with respect to financial statement preparation and presentation. Additionally, projections of any evaluation of effectiveness to future periods are subject to the risk that controls may become inadequate because of changes in conditions, or that the degree of compliance with the policies or procedures may deteriorate.

As described in the Company's 10-K for the fiscal year ended June 30, 2023, management assessed the effectiveness of the Company's internal control over financial reporting and based on such assessment, management concluded that as of June 30, 2023, our internal control over financial reporting was not effective due to an identified material weakness as a result of not having sufficient personnel resources with technical accounting expertise related to certain aspects of the financial reporting process. We plan to continue to assess our internal controls and control procedures and intend to take further action as necessary or appropriate to address any other matters we identify or are brought to our attention.

43.     The above-referenced statement was materially false and misleading at the time it was made because, as would later be revealed, the Company understated its issues with its internal controls which allowed the Company to issue false and misleading financial statements, as described herein.

44.     The 1Q24 Report provided the following, in pertinent part, regarding the Company's financials:

///

///

///

///

///

///

VERIFIED SHAREHOLDER DERIVATIVE COMPLAINT

**FLUX POWER HOLDINGS, INC.**
**CONDENSED CONSOLIDATED BALANCE SHEETS**

| | | September 30, 2023 |
|---|---|---|
| | | (Unaudited) |
| **ASSETS** | | |
| Current assets: | | |
| Cash | $ | 1,139,000 |
| Accounts receivable | | 10,699,000 |
| Inventories, net | | 19,485,000 |
| Other current assets | | 1,053,000 |
| Total current assets | | 32,386,000 |
| Right of use assets | | 2,670,000 |
| Property, plant and equipment, net | | 1,747,000 |
| Other assets | | 119,000 |
| Total assets | $ | 36,922,000 |
| **LIABILITIES AND STOCKHOLDERS' EQUITY** | | |
| Current liabilities: | | |
| Accounts payable | $ | 10,065,000 |
| Accrued expenses | | 3,782,000 |
| Line of credit | | 11,866,000 |
| Deferred revenue | | 336,000 |
| Customer deposits | | 17,000 |
| Finance lease payable, current portion | | 147,000 |
| Office lease payable, current portion | | 667,000 |
| Accrued interest | | 162,000 |
| Total current liabilities | | 27,102,000 |
| Office lease payable, less current portion | | 1,880,000 |
| Finance lease payable, less current portion | | 229,000 |
| Total liabilities | | 29,211,000 |
| Stockholders' equity: | | |
| Preferred stock, $0.001 par value; 500,000 shares authorized; none issued and outstanding | | - |
| Common stock, $0.001 par value; 30,000,000 shares authorized; 16,478,237 and 16,462,215 shares issued and outstanding at September 30, 2023 and June 30, 2023, respectively | | 16,000 |
| Additional paid-in capital | | 98,542,000 |
| Accumulated deficit | | (90,847,000) |
| Total stockholders' equity | | 7,711,000 |
| Total liabilities and stockholders' equity | $ | 36,922,000 |

The accompanying notes are an integral part of these condensed consolidated financial statements.

**FLUX POWER HOLDINGS, INC.**
**CONDENSED CONSOLIDATED STATEMENTS OF OPERATIONS**
**(Unaudited)**

| | | Three Months Ended 2023 |
|---|---|---|
| Revenues | $ | 14,797,000 |
| Cost of sales | | 10,486,000 |
| Gross profit | | 4,311,000 |
| Operating expenses: | | |
| Selling and administrative | | 4,725,000 |
| Research and development | | 1,295,000 |
| Total operating expenses | | 6,020,000 |
| Operating loss | | (1,709,000) |
| Interest income (expense), net | | (403,000) |
| Net loss | $ | (2,112,000) |
| Net loss per share - basic and diluted | $ | (0.13) |
| Weighted average number of common shares outstanding - basic and diluted | | 16,474,754 |

The accompanying notes are an integral part of these condensed consolidated financial statements.

45.    The financial statements provided *supra* were materially false and misleading because, as would be later revealed, the Company had overstated its inventory, gross profit, current assets, and total assets, and understated cost of sales and net loss, thus rendering its reported figures materially false and misleading which led to the Company informing the public that these figures could "no longer be relied upon."

VERIFIED SHAREHOLDER DERIVATIVE COMPLAINT

46.     On February 8, 2024, Flux Power filed with the SEC its quarterly report on Form 10-Q for the period ended December 31, 2023 (the "2Q24 Report"). Attached to the 2Q24 Report were certifications pursuant to SOX signed by Defendants Dutt and Scheiwe attesting to the accuracy of financial reporting, the disclosure of any material changes to the Company's internal control over financial reporting and the disclosure of all fraud.

47.     The 2Q24 Report contained the following statement regarding the Company's internal controls:

> Under the supervision of management, including our Chief Executive Officer and our Chief Financial Officer, we conducted an evaluation of the effectiveness of our internal control over financial reporting based on the framework in Internal Control - Integrated Framework issued by the Committee of Sponsoring Organizations of the Treadway Commission (2013 framework) and subsequent guidance prepared by the Commission specifically for smaller public companies as of December 31, 2023. Based on that evaluation, our management concluded that our internal control over financial reporting was not effective as of December 31, 2023 due to an identified material weakness as a result of not having sufficient personnel resources with technical accounting expertise related to certain aspects of the financial reporting process. Management intends to implement measures designed to improve our internal control over financial reporting to remediate material weaknesses, including the use of third-party consultants and accounting experts.
>
> Management of the Company is responsible for establishing and maintaining adequate internal control over financial reporting. The Company's internal control over financial reporting is a process designed under the supervision of the Company's principal executive officer and principal financial officer to provide reasonable assurance regarding the reliability of financial reporting and the preparation of the Company's financial statements for external purposes in accordance with generally accepted accounting principles. Because of its inherent limitations, internal control over financial reporting may not prevent or detect misstatements. All internal control systems, no matter how well designed, have inherent limitations. Therefore, even those systems

determined to be effective can provide only reasonable assurances with respect to financial statement preparation and presentation. Additionally, projections of any evaluation of effectiveness to future periods are subject to the risk that controls may become inadequate because of changes in conditions, or that the degree of compliance with the policies or procedures may deteriorate.

As described in the Company's 10-K for the fiscal year ended June 30, 2023, management assessed the effectiveness of the Company's internal control over financial reporting and based on such assessment, management concluded that as of June 30, 2023, our internal control over financial reporting was not effective due to an identified material weakness as a result of not having sufficient personnel resources with technical accounting expertise related to certain aspects of the financial reporting process. We plan to continue to assess our internal controls and control procedures and intend to take further action as necessary or appropriate to address any other matters we identify or are brought to our attention.

48.     The above-referenced statement was materially false and misleading at the time it was made because, as would later be revealed, the Company understated its issues with its internal controls which allowed the Company to issue false and misleading financial statements, as described herein.

49.     The 2Q24 Report provided the following, in pertinent part, regarding the Company's financials:

///
///
///
///
///
///
///
///

VERIFIED SHAREHOLDER DERIVATIVE COMPLAINT

**FLUX POWER HOLDINGS, INC.**
**CONDENSED CONSOLIDATED BALANCE SHEETS**

| | | December 31, 2023 (Unaudited) |
|---|---|---|
| **ASSETS** | | |
| Current assets: | | |
| Cash | $ | 1,584,000 |
| Accounts receivable | | 12,579,000 |
| Inventories, net | | 18,283,000 |
| Other current assets | | 942,000 |
| Total current assets | | 33,388,000 |
| Right of use assets | | 2,482,000 |
| Property, plant and equipment, net | | 1,680,000 |
| Other assets | | 119,000 |
| Total assets | $ | 37,669,000 |
| **LIABILITIES AND STOCKHOLDERS' EQUITY** | | |
| Current liabilities: | | |
| Accounts payable | $ | 10,021,000 |
| Accrued expenses | | 3,290,000 |
| Line of credit | | 13,575,000 |
| Deferred revenue | | 310,000 |
| Customer deposits | | 232,000 |
| Finance lease payable, current portion | | 150,000 |
| Office lease payable, current portion | | 689,000 |
| Accrued interest | | 130,000 |
| Total current liabilities | | 28,397,000 |
| Office lease payable, less current portion | | 1,698,000 |
| Finance lease payable, less current portion | | 191,000 |
| Total liabilities | | 30,286,000 |
| Stockholders' equity: | | |
| Preferred stock, $0.001 par value; 500,000 shares authorized; none issued and outstanding | | - |
| Common stock, $0.001 par value; 30,000,000 shares authorized; 16,532,275 and 18,462,215 shares issued and outstanding at December 31, 2023 and June 30, 2023, respectively | | 17,000 |
| Additional paid-in-capital | | 98,847,000 |
| Accumulated deficit | | (91,481,000) |
| Total stockholders' equity | | 7,383,000 |
| Total | | |

**FLUX POWER HOLDINGS, INC.**
**CONDENSED CONSOLIDATED STATEMENTS OF OPERATIONS**
**(Unaudited)**

| | | Three Months Ended December 31, | | |
| | | 2023 | | 2022 |
|---|---|---|---|---|
| Revenues | $ | 18,344,000 | $ | 17,158,000 |
| Cost of sales | | 12,676,000 | | 13,050,000 |
| Gross profit | | 5,668,000 | | 4,108,000 |
| Operating expenses: | | | | |
| Selling and administrative | | 4,593,000 | | 4,250,000 |
| Research and development | | 1,440,000 | | 1,162,000 |
| Total operating expenses | | 6,033,000 | | 5,412,000 |
| Operating loss | | (365,000) | | (1,304,000) |
| Other income | | - | | 8,000 |
| Interest income (expense), net | | (449,000) | | (385,000) |
| Net loss | $ | (814,000) | $ | (1,681,000) |
| Net loss per share - basic and diluted | $ | (0.05) | $ | (0.10) |
| Weighted average number of common shares outstanding - basic and diluted | | 16,516,700 | | 16,020,183 |

The accompanying notes are an integral part of these condensed consolidated financial statements.

50.   The financial statements provided *supra* were materially false and misleading because, as would be later revealed, the Company had overstated its inventory, gross profit, current assets, and total assets, and understated cost of sales and net loss, thus rendering its reported figures materially false and misleading which led to the Company informing the public that these figures could "no longer be relied upon."

VERIFIED SHAREHOLDER DERIVATIVE COMPLAINT

51.     On May 13, 2024, Flux Power filed with the SEC its quarterly report on Form 10-Q for the period ended March 31, 2024 (the "3Q24 Report"). Attached to the 3Q24 Report was a certification pursuant to SOX signed by Defendant Dutt attesting to the accuracy of financial reporting, the disclosure of any material changes to the Company's internal control over financial reporting and the disclosure of all fraud.

52.     The 3Q24 Report contained the following statement regarding the Company's internal controls:

> Under the supervision of management, including our Chief Executive Officer and our Chief Financial Officer, we conducted an evaluation of the effectiveness of our internal control over financial reporting based on the framework in Internal Control - Integrated Framework issued by the Committee of Sponsoring Organizations of the Treadway Commission (2013 framework) and subsequent guidance prepared by the Commission specifically for smaller public companies as of March 31, 2024. Based on that evaluation, our management concluded that our internal control over financial reporting was not effective as of March 31, 2024 due to previously identified material weaknesses as a result of not having sufficient personnel resources with technical accounting expertise related to certain aspects of the financial reporting process. Management engaged a financial consultant during the quarter ended March 31, 2024 with extensive technical accounting expertise in order to provide the technical advice needed. Management has also strengthened the Company's financial expertise by recently hiring an experienced chief financial officer in early March 2024. Management believes that such staff and consultant additions have improved our internal control over financial reporting and has moved us towards remediating previously identified material weaknesses.
>
> Management of the Company is responsible for establishing and maintaining adequate internal control over financial reporting. The Company's internal control over financial reporting is a process designed under the supervision of the Company's principal executive officer and principal financial officer to provide reasonable assurance regarding the reliability of financial reporting and the preparation of the Company's financial statements for external purposes in accordance

with generally accepted accounting principles. Because of its inherent limitations, internal control over financial reporting may not prevent or detect misstatements. All internal control systems, no matter how well designed, have inherent limitations. Therefore, even those systems determined to be effective can provide only reasonable assurances with respect to financial statement preparation and presentation. Additionally, projections of any evaluation of effectiveness to future periods are subject to the risk that controls may become inadequate because of changes in conditions, or that the degree of compliance with the policies or procedures may deteriorate.

As described in the Company's 10-K for the fiscal year ended June 30, 2023, management assessed the effectiveness of the Company's internal control over financial reporting and based on such assessment, management concluded that as of June 30, 2023, our internal control over financial reporting was not effective due to an identified material weakness as a result of not having sufficient personnel resources with technical accounting expertise related to certain aspects of the financial reporting process. We plan to continue to assess our internal controls and control procedures and intend to take further action as necessary or appropriate to address any other matters we identify or are brought to our attention.

53.    The above-referenced statement was materially false and misleading at the time it was made because, as would later be revealed, the Company understated its issues with its internal controls which allowed the Company to issue false and misleading financial statements, as described herein.

54.    The 3Q24 Report provided the following, in pertinent part, regarding the Company's financials:

///

///

///

///

///

26

VERIFIED SHAREHOLDER DERIVATIVE COMPLAINT

**FLUX POWER HOLDINGS, INC.**
**CONDENSED CONSOLIDATED BALANCE SHEETS**
**(Unaudited)**

|  | March 31, 2024 |
|---|---|
| **ASSETS** | |
| **Current assets:** | |
| Cash | $ 1,250,000 |
| Accounts receivable | 10,404,000 |
| Inventories, net | 20,174,000 |
| Other current assets | 840,000 |
| Total current assets | 32,668,000 |
| Right of use assets | 2,291,000 |
| Property, plant and equipment, net | 1,705,000 |
| Other assets | 118,000 |
| **Total assets** | $ 36,782,000 |
| **LIABILITIES AND STOCKHOLDERS' EQUITY** | |
| **Current liabilities:** | |
| Accounts payable | $ 11,050,000 |
| Accrued expenses | 3,845,000 |
| Line of credit | 13,845,000 |
| Deferred revenue | 543,000 |
| Customer deposits | 18,000 |
| Finance lease payable, current portion | 153,000 |
| Office lease payable, current portion | 712,000 |
| Accrued interest | 136,000 |
| Total current liabilities | 29,702,000 |
| Office lease payable, less current portion | 1,511,000 |
| Finance lease payable, less current portion | 153,000 |
| **Total liabilities** | 31,366,000 |
| **Stockholders' equity:** | |
| Preferred stock, $0.001 par value; 500,000 shares authorized; none issued and outstanding | – |
| Common stock, $0.001 par value; 30,000,000 shares authorized; 16,599,683 and 16,482,215 shares issued and outstanding at March 31, 2024 and June 30, 2023, respectively | 17,000 |
| Additional paid-in-capital | 99,520,000 |
| Accumulated deficit | (94,121,000) |
| **Total stockholders' equity** | 5,416,000 |
| **Total liabilities and stockholders' equity** | $ 36,782,000 |

The accompanying notes are an integral part of these condensed consolidated financial statements.

**FLUX POWER HOLDINGS, INC.**
**CONDENSED CONSOLIDATED STATEMENTS OF OPERATIONS**
**(Unaudited)**

|  | Three Months Ended March 31, | |
|---|---|---|
|  | 2024 | 2023 |
| Revenues | $ 14,457,000 | $ 15,067,000 |
| Cost of sales | 10,067,000 | 10,348,000 |
| Gross profit | 4,390,000 | 4,719,000 |
| **Operating expenses:** | | |
| Selling and administrative | 5,311,000 | 4,724,000 |
| Research and development | 1,286,000 | 1,182,000 |
| Total operating expenses | 6,597,000 | 5,906,000 |
| Operating loss | (2,207,000) | (1,187,000) |
| **Other income** | | |
| Interest income (expense), net | (433,000) | (258,000) |
| Net loss | $ (2,640,000) | $ (1,445,000) |
| Net loss per share - basic and diluted | $ (0.16) | $ (0.09) |
| Weighted average number of common shares outstanding - basic and diluted | 16,578,998 | 16,045,054 |

The accompanying notes are an integral part of these condensed consolidated financial statements.

55.    The financial statements provided *supra* were materially false and misleading because, as would be later revealed, the Company had overstated its inventory, gross profit, current assets, and total assets, and understated cost of sales and net loss, thus rendering its reported figures materially false and misleading which led to the Company informing the public that these figures could "no longer be relied upon."

VERIFIED SHAREHOLDER DERIVATIVE COMPLAINT

56.    The above-referenced statements were materially false and/or misleading because they misrepresented and failed to disclose the following adverse facts pertaining to the Company's business, operations and prospects, which were known to the Individual Defendants or recklessly disregarded by them. Specifically, the Individual Defendants made false and/or misleading statements and/or failed to disclose that: (i) Flux Power's financial statements from November 10, 2022 to the present included, among other things, overstated inventory, gross profit, current assets, and total assets; (ii) Flux Power understated its cost of sales and net loss; (iii) as a result, Flux Power would need to restate its previously filed financial statements from November 10, 2022 to the present; (iv) Flux Power understated its internal control weaknesses and/or stated that it had adequate internal controls when it did not; and (v) as a result, the Individual Defendants' statements about its business, operations, and prospects, were materially false and misleading and/or lacked a reasonable basis at all times.

## **THE TRUTH EMERGES**

57.    On September 5, 2024, after the market closed, Flux Power filed with the SEC a current report on Form 8-K announcing it would need to restate certain of its previous financial statements (the "Restatement Announcement"). The Restatement Announcement disclosed misstatements relating to the Company's inventory, but stated that the Company was assessing whether other financial figures and prior financial statements might need to be restated as well as the Prior Financial Statements (as defined in the Restatement Announcement).

58.    The Restatement Announcement stated the following:

On August 30, 2024, the Board of Directors of Flux Power Holdings, Inc. (the "Company") including its audit committee members, concluded that the previously issued audited consolidated financial statements as of and for the fiscal year ended June 30, 2023 and the unaudited consolidated financial statements as of and for the quarters

VERIFIED SHAREHOLDER DERIVATIVE COMPLAINT

ended September 30, 2023, December 31, 2023, and March 31, 2024 (collectively, the "Prior Financial Statements"), which were filed with the Securities and Exchange Commission("SEC") on September 21, 2023, November 9, 2023, February 8, 2024 and May 13, 2024, respectively, should no longer be relied upon because of errors in such financial statements relating to the improper accounting for inventory and a restatement should be undertaken. During the Company's preparation of financial statements for the year ended June 30, 2024, it became aware that (i) approximately $1.2 million of excess and obsolete inventory, primarily as a result of a change in battery cells from a new supplier, was not properly reserved or written-off in earlier periods resulting in an overstatement of inventory, and (ii) certain loaner service packs were improperly accounted for as finished goods inventory as of June 30, 2023 resulting in an overstatement of inventory of approximately $0.5 million. As a result, the Company concluded that the errors resulted in (i) an overstatement of inventory, current assets, total assets and accumulated deficit on its balance sheet, and (ii) an understatement of cost of sales and net loss, and overstatement of gross profit on its statement of operations in the Prior Financial Statements. The Company is also evaluating the impact that improper accounting for inventory had on other historical financial statements for previous quarterly and fiscal periods which also could include the audited consolidated financial statements as of and for the years ended June 30, 2022 and 2021, as well as the quarterly unaudited consolidated financial statements within the years ended June 30, 2022, 2021 and 2020.

Based upon the foregoing, the Company's Board of Directors is evaluating the impact of these matters on previous fiscal years and quarters to determine which financial statements in addition to the Prior Financial Statements may need to be restated and, as a part of this evaluation, may include additional revisions and/or adjustments to the Prior Financial Statements other than inventory that may be identified during the restatement process. Based on the results of the Board's evaluation, the Company intends to file with the SEC one or more amended periodic reports covering the impacted financial statements as soon as practicable.

Management previously concluded that the Company's disclosure controls and procedures and internal control over financial reporting were not effective during the periods covered by the Prior Financial

Statements due to previously identified material weaknesses resulting from having insufficient personnel resources with technical accounting expertise related to certain aspects of the financial reporting process. As part of its ongoing remedial efforts to strengthen controls and procedures, the Company engaged an external financial consultant with extensive technical accounting expertise during the quarter ended March 31, 2024. In addition, in early March of 2024, the Company strengthened its internal financial expertise by hiring a new Chief Financial Officer with over 20 years of experience with publicly traded companies and finance and accounting and who also served as an auditor for 10 years with Ernst & Young LLP, where he became a certified public accountant.

After re-evaluation, the Company's management has concluded that considering the errors described above, this represents an additional material weakness in the Company's disclosure controls and procedures and the Company's internal control over financial reporting. To address this material weakness, management plans to continue to devote significant effort and resources to the remediation and improvement of the Company's internal control over financial reporting. While the Company has processes to account for its inventory, under the leadership of the Company's new Chief Financial Officer, the Company intends to strengthen its internal processes and procedures over inventory management and reporting. The Company has begun updating its processes and controls around inventory obsolescence, the timing of its internal inventory audits and implementation of other measures. In addition, the Company has also recently engaged an external financial consultant with extensive technical accounting expertise to assist with the analysis of prior periods, along with an independent law firm to conduct an internal review of the events and activities leading to errors in the financial statements.

59.     The Restatement Announcement further disclosed the following:

In addition, the inventory error discussed above led to non-compliance with certain requirements under the Company's Loan and Security Agreement with Gibraltar Business Capital, LLC, a Delaware limited liability company ("GBC") (the "Loan Agreement"). The Loan Agreement provides the Company with a revolving credit facility for

VERIFIED SHAREHOLDER DERIVATIVE COMPLAINT

up to $16 million. Under the Loan Agreement, upon an occurrence of an event of default, GBC may, at its option, declare its commitments to the Company to be terminated and all obligations to be immediately due and payable, all without demand, notice or further action of any kind required on the part of GBC, and/or exercise other remedies available to it among other things including its rights as a secured party. On August 29, 2024, GBC agreed to waive the Company's non-compliance with, and the effects of its non-compliance under, various representations, financial covenants and nonfinancial covenants relating to the Company's financial statements and inventory contained in the Loan Agreement arising from the inventory error described under "Item 4.02 Non-Reliance on Previously Issued Financial Statements or a Related Audit Report or Completed Interim Review" of this Current Report (the "Waiver"). As a result of the Waiver, the Company expects that its revolving credit facility remains available subject to meeting certain lending criteria under the Loan Agreement.

60.     On this news, the price of Flux Power common stock fell by $0.17, or 5.36%, to close at $3.00 on September 6, 2024. The next trading day, it fell a further $0.12, or 4%, to close at $2.88 on September 9, 2024.

61.     On September 30, 2024, after the market closed, the Company filed with the SEC a notification of late filing on Form 12b-25 (the "Late Filing Notice"). The Late Filing Notice stated the following:

The registrant is unable to file its Annual Report on Form 10-K for the fiscal period year ended June 30, 2024 (the "Form 10-K"), within the prescribed time period without unreasonable effort or expense. On September 5, 2024, and as previously disclosed, the Board of Directors, including its audit committee members, concluded that the previously issued audited consolidated financial statements as of and for the fiscal year ended June 30, 2023 and the unaudited consolidated financial statements as of and for the quarters ended September 30, 2023, December 31, 2023, and March 31, 2024 (collectively, the "Prior Financial Statements"), which were filed with the Securities and Exchange Commission ("SEC") on September 21, 2023, November 9, 2023, February 8, 2024 and May 13, 2024, respectively, should no longer be relied upon because of errors in such financial statements

VERIFIED SHAREHOLDER DERIVATIVE COMPLAINT

relating to the improper accounting for inventory and a restatement should be undertaken.

\*\*\*

The registrant is also evaluating the impact that improper accounting for inventory had on other historical consolidated financial statements for previous quarterly and fiscal periods which also could include the audited consolidated financial statements as of and for the years ended June 30, 2022 and 2021, as well as the quarterly unaudited consolidated financial statements within the years ended June 30, 2022, 2021 and 2020.

Based upon the foregoing, the registrant's Board of Directors is evaluating the impact of these matters on previous fiscal years and quarters to determine which financial statements in addition to the Prior Financial Statements may need to be restated and, as a part of this evaluation, may include additional revisions and/or adjustments to the Prior Financial Statements other than inventory that may be identified during the restatement process.

The registrant has commenced the restatement process. The registrant currently intends to present the restatement in its Form 10-K. However, in light of restatement of Prior Financial Statements and the filing due date for the Form 10-K, the registrant requires additional time to prepare and review the consolidated financial statements for the Form 10-K. The registrant is currently unable to estimate the timing for the filing of the Form 10-K but hopes to file the Form 10-K before the next quarterly report on Form 10-Q is due, or as soon as practicable.

62.     On this news, the price of Flux Power common stock fell by $0.18 per share, or 5.9%, to close at $2.86 on October 1, 2024.

63.     Following this, on November 25, 2024, the Company issued a press release which announced that it had "received a letter from the Listing Qualifications Department of the Nasdaq Stock Market LLC ("Nasdaq") notifying the Company that it was not in compliance with requirements of Nasdaq Listing Rule 5250(c)(1) as a result of not having filed its Quarterly Report on Form 10-Q for the period ended

VERIFIED SHAREHOLDER DERIVATIVE COMPLAINT

September 30, 2024 ("Form 10-Q") and its Annual Report on Form 10-K for fiscal year ended June 30, 2024 ("Form 10-K"), with the Securities and Exchange Commission ("SEC")." The press release further stated that the Company had "until December 16, 2024, to submit to Nasdaq a plan to regain compliance with the Nasdaq Listing Rule. If Nasdaq accepts the Company's plan, then Nasdaq may grant the Company up to 180 days from the prescribed due date for the Form 10-K to regain compliance, or April 14, 2025."

64.    On this news, the Company's share price declined from a close of $2.01 per share on November 25, 2024 to a close of $1.60 per share on November 27, 2024.

## **INSIDER TRADING ALLEGATIONS**

65.    Defendants Johnson, Walters-Hoffert, Scheiwe, and Dutt, while in possession of material, non-public information (*i.e.*, the truth regarding the Company's controls over its financial reporting), collectively sold approximately 335,301 shares of Flux Power common stock at artificially inflated prices[1] during the Relevant Period, reaping over $1.4 million in personal proceeds, as follows:

| Defendant | Date | Shares Sold | Avg. Share Price ($) | Total Proceeds ($) |
|---|---|---|---|---|
| Johnson | 02/24/2023 | 10,075 | 6.681 | 67,311 |
| | 02/28/2023 | 37,700 | 6.6815 | 251,894 |
| | 03/02/2023 | 29,700 | 6.5943 | 195,850 |
| | 03/07/2023 | 155 | 6.4705 | 1,003 |
| | 06/08/2023 | 15,000 | 4.1169 | 61,753 |
| | 06/13/2023 | 4,000 | 4.15 | 16,600 |
| | 09/13/2023 | 10,123 | 4.0526 | 41,024 |
| | 09/18/2023 | 20,000 | 4.2714 | 85,429 |
| | 09/21/2023 | 9,202 | 4.6038 | 42,364 |

---

[1]    The Company's true share price was $1.60 per share, the price at closing on November 27, 2024 when all disclosures had been made. As such, the insider sales made here reaped profits of over double, if not triple, what they should have been.

VERIFIED SHAREHOLDER DERIVATIVE COMPLAINT

|  | 09/27/2023 | 30,134 | 3.6146 | 108,921 |
|---|---|---|---|---|
|  | 05/17/2024 | 16,453 | 3.3217 | 54,652 |
|  | 06/12/2024 | 134,623 | 2.9824 | 401,500 |
| Walters-Hoffert | 09/25/2023 | 6,761 | 3.8782 | 26,221 |
|  | 04/22/2024 | 5,909 | 4.0327 | 23,829 |
|  | 04/29/2024 | 534 | 4.5 | 2,403 |
| Scheiwe | 10/27/2023 | 1,067 | 3.3156 | 3,538 |
|  | 11/02/2023 | 638 | 3.2943 | 23,829 |
| Dutt | 10/27/2023 | 1,424 | 3.3117 | 4,716 |
|  | 10/31/2023 | 582 | 3.3 | 1,921 |
|  | 11/02/2023 | 1,221 | 3.2943 | 4,022 |

66.     Defendant Johnson received a material personal benefit from his insider trading, selling a total of 317,165 shares of artificially inflated Company common stock for personal profits of approximately $1,328,301. His insider sales, made with knowledge of material nonpublic information before the material misstatements and omissions were exposed, demonstrate his motive in facilitating and participating in the scheme.

67.     Defendant Walters-Hoffert received a material personal benefit from her insider trading, selling a total of 13,204 shares of artificially inflated Company common stock for personal profits of approximately $52,453. Her insider sales, made with knowledge of material nonpublic information before the material misstatements and omissions were exposed, demonstrate her motive in facilitating and participating in the scheme.

68.     Defendant Scheiwe received a material personal benefit from his insider trading, selling a total of 1,705 shares of artificially inflated Company common stock for personal profits of approximately $27,367. His insider sales, made with knowledge of material nonpublic information before the material misstatements and omissions were exposed, demonstrate his motive in facilitating and participating in the scheme.

///

VERIFIED SHAREHOLDER DERIVATIVE COMPLAINT

69.     Defendant Dutt received a material personal benefit from his insider trading, selling a total of 3,227 shares of artificially inflated Company common stock for personal profits of approximately $10,659. His insider sales, made with knowledge of material nonpublic information before the material misstatements and omissions were exposed, demonstrate his motive in facilitating and participating in the scheme.

## DAMAGE TO THE COMPANY

### Securities Class Action

70.     On November 1, 2024, a securities class action complaint was filed in the United States District Court for the District of Nevada against the Company and the Officer Defendants. The complaint alleges violations of Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 and SEC Rule 10b-5, in the case captioned: *Kassam v. Flux Power Holdings, Inc., et al.*, Case No. 2:24-cv-02051 (D. Nev.) ("Securities Class Action").

71.     As a result of the wrongs complained of herein, Defendants have subjected the Company to the significant cost of defending itself and certain of the Company's former officers. The Company will continue to incur significant sums in relation to the above Securities Class Action and any liability or settlement that results.

### Unjust Compensation

72.     At all relevant times, the Company paid lucrative compensation to the Individual Defendants. The Company paid the Individual Defendants in connection with their respective roles as officers and/or directors of the Company.

73.     Accordingly, as part of their respective roles, the Individual Defendants were required to, among other things, exercise due care and diligence in the management and administration of the affairs of the Company, act ethically and in compliance with all laws and regulations, maintain adequate internal controls, and

conduct business in a fair and transparent manner.  Further, each of the Individual Defendants had additional duties and responsibilities owed to the Company by virtue of their executive, directorial and/or committee roles, as described *infra*, for which they were compensated for.

74.    However, the Individual Defendants failed to carry out their duties adequately or at all, causing harm to the Company, as alleged herein.  Because Defendants failed to carry out their respective duties, the compensation they received during the Relevant Period was excessive and undeserved.  As such, the Individual Defendants were unjustly enriched to the detriment of the Company.

**Insider Trading**

75.    As also detailed above, Defendants Johnson, Walters-Hoffert, Scheiwe, and Dutt, while in possession of material, non-public information (described *supra*), collectively sold over 335,301 shares of their personally held stock for collective gross proceeds in excess of $1.4 million.

**Additional Damages to the Company**

76.    In addition to the damages specified above, the Company will also suffer further losses in relation to any internal investigations and amounts paid to lawyers, accountants, and investigators in connection thereto.

77.    The Company will also suffer losses in relation to the Individual Defendants' failure to maintain adequate internal controls, including the expense involved with implementing and maintaining improved internal controls.

78.    As a direct and proximate result of the Individual Defendants' conduct, Flux Power has also suffered and will continue to suffer a loss of reputation and goodwill, and a "liar's discount" that will plague the Company's stock in the future due to the Company's and their misrepresentations.

///

///

VERIFIED SHAREHOLDER DERIVATIVE COMPLAINT

## **CORPORATE GOVERNANCE**

79.    At all relevant times, the Company had in place extensive corporate governance documents imposing duties and responsibilities on its directors and officers, and additional duties on the Company's committee members.  Accordingly, each of the Defendants were required to comply with the corporate governance documents, as detailed below.

80.    Despite the following corporate governance, the conduct of the Defendants complained of herein involves a knowing and culpable violation of their obligations as directors and officers of the Company, the absence of good faith on their part, and a reckless disregard for their duties to the Company and its investors that Defendants were aware posed a risk of serious injury to the Company.

**Code of Business Conduct and Ethics**

81.    At all relevant times, the Company had in place its Code of Business Conduct and Ethics ("Code of Conduct"), applicable to all "directors, officers and employees" to:

(a) promote honest and ethical conduct, including the ethical handling of actual or apparent conflicts of interest;

(b) promote full, fair, accurate, timely and understandable disclosure in reports and documents that the Company files with, or submits to, the Securities and Exchange Commission (the "SEC") and in other public communications made by the Company;

(c) promote compliance with applicable governmental laws, rules and regulations;

(d) promote the protection of Company assets, including corporate opportunities and confidential information;

(e) promote fair dealing practices;

(f) deter wrongdoing; and

37

(g) ensure accountability for adherence to the Code.

82.     From the outset, the Code of Conduct states:

2.   Honest and Ethical Conduct.

2.1   The Company's policy is to promote high standards of integrity by conducting its affairs honestly and ethically.

2.2   Each director, officer and employee must act with integrity and observe the highest ethical standards of business conduct in his or her dealings with the Company's customers, suppliers, partners, service providers, competitors, employees and anyone else with whom he or she has contact in the course of performing his or her job.

83.     In a section entitled "Compliance," the Code of Conduct states:

[]   Employees, officers and directors should comply, both in letter and spirit, with all applicable laws, rules and regulations in the cities, states and countries in which the Company operates.

[]   Although not all employees, officers and directors are expected to know the details of all applicable laws, rules and regulations, it is important to know enough to determine when to seek advice from appropriate personnel.   Questions about compliance should be addressed to the Legal Department.

[]   No director, officer or employee may purchase or sell any Company securities while in possession of material non-public information regarding the Company, nor may any director, officer or employee purchase or sell another company's securities while in possession of material non-public information regarding that company.   It is against Company policies and illegal for any director, officer or employee to use material non-public information regarding the Company or any other company to:

(a) obtain profit for himself or herself; or

///

VERIFIED SHAREHOLDER DERIVATIVE COMPLAINT

(b) directly or indirectly "tip" others who might make an investment decision on the basis of that information.

84.    In a section entitled "Disclosure," the Code of Conduct states:

[]  The Company's periodic reports and other documents filed with the SEC, including all financial statements and other financial information, must comply with applicable federal securities laws and SEC rules.

[] Each director, officer and employee who contributes in any way to the preparation or verification of the Company's financial statements and other financial information must ensure that the Company's books, records and accounts are accurately maintained.  Each director, officer and employee must cooperate fully with the Company's accounting and internal audit departments, as well as the Company's independent public accountants and counsel.

[] Each director, officer and employee who is involved in the Company's disclosure process must:

(a)    be familiar with and comply with the Company's disclosure controls and procedures and its internal control over financial reporting; and

(b)    take all necessary steps to ensure that all filings with the SEC and all other public communications about the financial and business condition of the Company provide full, fair, accurate, timely and understandable disclosure.

**Audit Committee Charter**

85.    At all relevant times, the Company had in place its Audit Committee Charter which sets forth the additional duties and responsibilities of the Audit Committee. The Audit Committee Charter states that the "purpose" of the Audit Committee is "to oversee the financial reporting and disclosure process."

86.    The Audit Committee Charter sets forth the following duties and responsibilities, in relevant part:

///

///

39

The Committee Shall have the following authority and responsibilities:

[] To review and discuss with the Company's independent auditors (1) the auditors' responsibilities under generally accepted auditing standards and the responsibilities of management in the audit process, (2) the overall audit strategy, (3) the scope and timing of the annual audit, (4) any significant risks identified during the auditors' risk assessment procedures and (5) when completed, the results, including significant findings, of the annual audit.

[] To review and discuss with the Company's independent auditors (1) all critical accounting policies and practices to be used in the audit; (2) all alternative treatments of financial information within generally accepted accounting principles ("GAAP") that have been discussed with management, the ramifications of the use of such alternative treatments and the treatment preferred by the auditors; and (3) other material written communications between the auditors and management.

[] To review with management and the Company's independent auditors: any major issues regarding accounting principles and financial statement presentation, including any significant changes in the Company's selection or application of accounting principles; any significant financial reporting issues and judgments made in connection with the preparation of the Company's financial statements, including the effects of alternative GAAP methods; and the effect of regulatory and accounting initiatives and off-balance sheet structures on the Company's financial statements.

[] To review with management, and the Company's independent auditors the adequacy and effectiveness of the Company's internal controls, including any significant deficiencies or material weaknesses in the design or operation of, and any material changes in, the Company's internal controls and any special audit steps adopted in light of any material control deficiencies, and any fraud involving management or other employees with a significant role in such internal controls, and review and discuss with management and the Company's independent auditors disclosure relating to the Company's internal controls, and the independent auditors' report on the effectiveness of the Company's internal control over financial reporting and the

VERIFIED SHAREHOLDER DERIVATIVE COMPLAINT

required management certifications to be included in or attached as exhibits to the Company's annual report on Form 10-K or quarterly report on Form 10-Q, as applicable.

[] To review and discuss with the Company's independent auditors any other matters required to be discussed by applicable auditing standards, including, without limitation, the auditors' evaluation of the quality of the company's financial reporting, information relating to significant unusual transactions and the business rationale for such transactions and the auditors' evaluation of the company's ability to continue as a going concern.

[] To review and discuss with the Company's independent auditors and management the Company's annual audited financial statements (including the related notes), the form of audit opinion to be issued by the auditors on the financial statements and the disclosure under "Management's Discussion and Analysis of Financial Condition and Results of Operations" to be included in the Company's annual report on Form 10-K before the Form 10-K is filed.

[] To recommend to the Board that the audited financial statements be included in the Company's Form 10-K and whether the Form 10-K should be filed with the SEC; and to produce the audit committee report required to be included in the Company's proxy statement.

## **DUTIES OF THE DIRECTOR DEFENDANTS**

87.    As members of the Company's Board, the Director Defendants were held to the highest standards of honesty and integrity and charged with overseeing the Company's business practices and policies and assuring the integrity of its financial and business records.

88.    The conduct of the Director Defendants complained of herein involves a knowing and culpable violation of their obligations as directors and officers of the Company, the absence of good faith on their part, and a reckless disregard for their duties to the Company and its investors that the Director Defendants were aware posed a risk of serious injury to the Company.

VERIFIED SHAREHOLDER DERIVATIVE COMPLAINT

89.     By reason of their positions as officers and/or directors of the Company, and because of their ability to control the business and corporate affairs of the Company, the Director Defendants owed the Company and its investors the fiduciary obligations of trust, loyalty, and good faith.  The obligations required the Director Defendants to use their utmost abilities to control and manage the Company in an honest and lawful manner.  The Director Defendants were and are required to act in furtherance of the best interests of the Company and its investors.

90.     Each director of the Company owes to the Company and its investors the fiduciary duty to exercise loyalty, good faith, and diligence in the administration of the affairs of the Company and in the use and preservation of its property and assets.  In addition, as officers and/or directors of a publicly held company, the Director Defendants had a duty to promptly disseminate accurate and truthful information with regard to the Company's operations, finances, and financial condition, as well as present and future business prospects, so that the market price of the Company's stock would be based on truthful and accurate information.

91.     To discharge their duties, the officers and directors of the Company were required to exercise reasonable and prudent supervision over the management, policies, practices, and controls of the affairs of the Company. By virtue of such duties, the officers and directors of the Company were required to, among other things:

(a)     ensure that the Company complied with its legal obligations and requirements, including acting only within the scope of its legal authority and disseminating truthful and accurate statements to the SEC and investing public;

(b)     conduct the affairs of the Company in an efficient, businesslike manner so as to make it possible to provide the highest quality performance

///

of its business, to avoid wasting the Company's assets, and to maximize the value of the Company's stock;

(c)   properly and accurately guide investors and analysts as to the true financial condition of the Company at any given time, including making accurate statements about the Company's business prospects, and ensuring that the Company maintained an adequate system of financial controls such that the Company's financial reporting would be true and accurate at all times;

(d)   remain informed as to how the Company conducted its operations, and, upon receipt of notice or information of imprudent or unsound conditions or practices, make reasonable inquiries in connection therewith, take steps to correct such conditions or practices, and make such disclosures as necessary to comply with federal and state securities laws;

(e)   ensure that the Company was operated in a diligent, honest, and prudent manner in compliance with all applicable federal, state and local laws, and rules and regulations; and

(f)   ensure that all decisions were the product of independent business judgment and not the result of outside influences or entrenchment motives.

92.   Each Director Defendant, by virtue of his position as a director and/or officer, owed to the Company and to its shareholders the fiduciary duties of loyalty, good faith, and the exercise of due care and diligence in the management and administration of the affairs of the Company, as well as in the use and preservation of its property and assets. The conduct of the Director Defendants complained of herein involves a knowing and culpable violation of their obligations as directors and officers of the Company, the absence of good faith on their part, and a reckless disregard for their duties to the Company and its shareholders that the Director

///

VERIFIED SHAREHOLDER DERIVATIVE COMPLAINT

Defendants were aware, or should have been aware, posed a risk of serious injury to the Company.

93.    The Director Defendants breached their duties of loyalty and good faith by causing the Company to issue false and misleading statements concerning the financial condition of the Company.  As a result, the Company has expended, and will continue to expend, significant sums of money related to investigations and lawsuits and to structure settlements to resolve them.

## **DERIVATIVE AND DEMAND FUTILITY ALLEGATIONS**

94.    Plaintiff brings this action derivatively in the right and for the benefit of the Company to redress injuries suffered and to be suffered as a direct and proximate result of the breaches of fiduciary duties and other unlawful conduct by the Individual Defendants.

95.    Plaintiff will adequately and fairly represent the interests of the Company and its shareholders in enforcing and prosecuting its rights and has retained counsel competent and experienced in derivative litigation.

96.    Plaintiff is a current owner of the Company's stock and has continuously been an owner of the Company's stock during all times relevant to the Individual Defendants' wrongful course of conduct alleged herein. Plaintiff understands his obligation to hold stock throughout the duration of this action and is prepared to do so.

97.    During the illegal and wrongful course of conduct at the Company and through the present, the Board consisted of the Director Defendants.  Because of the facts set forth throughout this Complaint, demand on the Company Board to institute this action is not necessary because such a demand would have been a futile and useless act.

98.    The Company Board is currently comprised of five (5) members – including Defendants Dutt, Johnson, Leposky, Robinette, and Walters-Hoffert.

Thus, Plaintiff is required to show that a majority of the Director Defendants, *i.e.*, three (3), cannot exercise independent objective judgement about whether to bring this action or whether to vigorously prosecute this action.

99.    Each of the Director Defendants face a likelihood of liability in this action because they caused and/or permitted the Company to make false and misleading statements and omissions concerning the information described herein. Because of their advisory, managerial, and directorial positions within the Company, the Director Defendants had knowledge of material, non-public information regarding the Company and were directly involved in the operations of the Company at the highest levels.

100.    The Director Defendants either knew or should have known of the false and misleading statements that were issued on the Company's behalf and took no steps in a good faith effort to prevent or remedy that situation.

101.    The Director Defendants (or at the very least a majority of them) cannot exercise independent objective judgment about whether to bring this action or whether to vigorously prosecute this action.  For the reasons that follow, and for reasons detailed elsewhere in this complaint, Plaintiff has not made (and should be excused from making) a pre-filing demand on the Board to initiate this action because making a demand would be a futile and useless act.

102.    Each of the Director Defendants, by virtue of their roles, were required to, among other things: (i) ensure that the Company complied with its legal and regulatory obligations and requirements; (ii) properly and accurately guide investors and analysts as to the true financial condition of the Company at any given time; (iii) remain informed as to how the Company conducted its operations, make reasonable inquiries, and take steps to correct any improper conditions or practices; and (iv) ensure the Company was operated in a diligent, honest, and prudent manner.  Despite

///

this, the Director Defendants failed to fulfil these duties by permitting the false and misleading statements to be made and not correcting those statements.

103.   As a trusted Company directors, the Director Defendants conducted little, if any, oversight of the scheme to cause the Company to make false and misleading statements, consciously disregarded their duties to monitor such controls over reporting and engagement in the scheme, and consciously disregarded their duties to protect corporate assets.

104.   Each of the Director Defendants oversaw, approved and/or permitted the wrongs alleged herein to have occurred and participated in efforts to conceal or disguise those wrongs from the Company's stockholders or recklessly and/or with gross negligence disregarded or failed to oversee the wrongs complained of herein and are therefore not disinterested parties.

105.   Each of the Director Defendants reviewed, authorized and/or permitted the false statements to be disseminated directly to the public and made available and distributed to shareholders, authorized and/or permitted the issuance of various false and misleading statements, and are principal beneficiaries of the wrongdoing alleged herein, and thus, could not fairly and fully prosecute such a suit even if they instituted it.

106.   Additionally, each of the Director Defendants received payments, benefits, stock options, and other emoluments by virtue of their membership on the Board and their control of the Company.

## THE DIRECTOR DEFENDANTS ARE
## NOT INDEPENDENT OR DISINTERESTED

### Defendant Dutt

107.   Defendant Dutt is not disinterested or independent, and therefore, is incapable of considering demand because he (as its president and CEO) is an employee of the Company who derives substantially all of his income from his

employment with Flux Power, making him not independent, as admitted by the Company.  As such, Defendant Dutt cannot independently consider any demand to sue himself for breaching his fiduciary duties to Flux Power, because that would expose him to liability and threaten his livelihood.

108.  As CEO, Defendant Dutt also fails the NASDAQ's bright-line independence test and cannot, therefore, be considered independent, as the Company admits in its 2024 Proxy Statement. As such, Defendant Dutt could not objectively and disinterestedly consider a demand to sue the Individual Defendants and any demand upon Defendant Dutt is therefore futile.

109.  Because of Defendant Dutt's participation in the gross dereliction of fiduciary duties, and breaches of the duties of due care, good faith, and loyalty, Defendant Dutt is unable to comply with his fiduciary duties and prosecute this action.  Defendant Dutt is in a position of irreconcilable conflict of interest in terms of the prosecution of this action and defending himself in the Securities Class Action, brought under the Securities Exchange Act of 1934.

110.  Furthermore, Defendant Dutt, while in possession of material, non-public information, took advantage of the Company's artificially inflated stock price and sold approximately 3,227 shares of Company stock for personal proceeds in excess of $10,600. As such, Defendant Dutt received a material personal benefit thereby and also faces a substantial likelihood of liability therefor.

111.  Defendant Dutt is neither independent nor disinterested. Any demand upon Defendant Dutt is futile and, thus, excused.

**Defendant Johnson**

112.  Defendant Johnson has served as a Company director since the Company's inception. Defendant Johnson also serves as sole director and beneficial owner of Esenjay Investments LLC which is an affiliate of the Company, owning approximately 26% of the Company's outstanding shares. As such, Defendant

Johnson is not an independent director, as admitted in the Company's 2024 Proxy Statement, and could not consider a demand to sue.

113.   In addition, Defendant Johnson, while in possession of material, non-public information, took advantage of the Company's artificially inflated stock price and sold approximately 317,165 shares of Company stock for personal proceeds in excess of $1.3 million. As such, Defendant Johnson received a material personal benefit thereby and also faces a substantial likelihood of liability therefor.

**Defendants Walters-Hoffert, Leposky, and Robinette**

114.   Defendants Walters-Hoffert, Leposky, and Robinette are also all members of the Audit Committee and had certain additional duties by virtue thereof, as described *supra*. Among the responsibilities, Defendants Walters-Hoffert, Leposky, and Robinette were required to oversee the Company's compliance with all laws and regulations. However, Defendants Walters-Hoffert, Leposky, and Robinette failed to fulfil these duties and permitted and/or caused the Company to issue false and/or misleading statements. Defendants Walters-Hoffert, Leposky, and Robinette further breached their fiduciary duties by failing to ensure that adequate internal controls were in place regarding the serious issues and deficiencies described above.

115.   In addition, Defendant Walters-Hoffert, while in possession of material, non-public information, took advantage of the Company's artificially inflated stock price and sold approximately 13,204 shares of Company stock for personal proceeds in excess of $52,400. As such, Defendant Walters-Hoffert received a material personal benefit thereby and also faces a substantial likelihood of liability therefor.

**Additional Reasons Demand is Futile**

116.   Nevada law requires that the Director Defendants each make decisions in good faith, on an informed basis, and in the best interests of the Company. NRS

§ 78.138. As such, the Director Defendants (and especially the directors serving on the Audit Committee) were required to be informed of, *inter alia*, the Company's financial reporting and internal controls over financial reporting. The fact that the Director Defendants engaged in and/or permitted and/or failed to correct the false and misleading statements regarding, *inter alia*, the Company's financial statements, inventory, and internal controls over financial reporting is either (i) a knowing and intentional issuance of false statements in violation of Nevada law and their fiduciary duties to the Company; or (ii) a reckless disregard as to the Company's operations and reporting. In any event, the Director Defendants each breached their fiduciary duties to the Company, face a substantial likelihood therefore, and cannot independently and disinterestedly consider a demand to sue.

117.    In violation of the Code of Conduct, the Director Defendants conducted little, if any, oversight of the Company's engagement in the Defendants' scheme to issue materially false and misleading statements to the public and to facilitate and disguise the Defendants' violations of law, including breaches of fiduciary duty, unjust enrichment, abuse of control, gross mismanagement, waste of corporate assets, and violations of the Exchange Act. In further violation of the Code of Conduct, the Director Defendants failed to comply with laws and regulations, maintain the accuracy of Company records and reports, avoid conflicts of interest, conduct business in an honest and ethical manner, and properly report violations of the Code of Conduct. Thus, the Director Defendants face a substantial likelihood of liability and demand is futile as to them.

118.    Flux Power has been and will continue to be exposed to significant losses due to the wrongdoing complained of herein, yet the Director Defendants have not filed any lawsuits against themselves or any others who were responsible for that wrongful conduct to attempt to recover for Flux Power any part of the damages Flux

///

Power suffered and will continue to suffer thereby. Thus, any demand upon the Director Defendants would be futile.

119.   The Director Defendants' conduct described herein and summarized above could not have been the product of legitimate business judgment as it was based on bad faith and intentional, reckless, or disloyal misconduct. Thus, none of the Director Defendants can claim exculpation from their violations of duty pursuant to the Company's charter (to the extent such a provision exists). As a majority of the Director Defendants face a substantial likelihood of liability, they are self-interested in the transactions challenged herein and cannot be presumed to be capable of exercising independent and disinterested judgment about whether to pursue this action on behalf of the shareholders of the Company. Accordingly, demand is excused as being futile.

120.   The acts complained of herein constitute violations of fiduciary duties owed by Flux Power's officers and directors, and these acts are incapable of ratification.

121.   The Director Defendants may also be protected against personal liability for their acts of mismanagement and breaches of fiduciary duty alleged herein by directors' and officers' liability insurance if they caused the Company to purchase it for their protection with corporate funds, *i.e*., monies belonging to the stockholders of Flux Power. If there is a directors' and officers' liability insurance policy covering the Director Defendants, it may contain provisions that eliminate coverage for any action brought directly by the Company against the Director Defendants, known as, *inter alia*, the "insured-versus-insured exclusion."  As a result, if the Director Defendants were to sue themselves or certain of the officers of Flux Power, there would be no directors' and officers' insurance protection. Accordingly, the Director Defendants cannot be expected to bring such a suit. On the other hand, if the suit is brought derivatively, as this action is brought, such

VERIFIED SHAREHOLDER DERIVATIVE COMPLAINT

insurance coverage, if such an insurance policy exists, will provide a basis for the Company to effectuate a recovery. Thus, demand on the Director Defendants is futile and, therefore, excused.

122. If there is no directors' and officers' liability insurance, then the Director Defendants will not cause Flux Power to sue the Individual Defendants named herein, since, if they did, they would face a large uninsured individual liability. Accordingly, demand is futile in that event, as well.

123. Thus, for all of the reasons set forth above, all of the Director Defendants, and, if not all of them, at least a majority of the Director Defendants, cannot consider a demand with disinterestedness and independence. Consequently, a demand upon the Board is excused as futile.

## CLAIMS FOR RELIEF

## FIRST CAUSE OF ACTION

### (Against the Individual Defendants for Breach of Fiduciary Duties)

124. Plaintiff incorporates by reference and re-allege each and every allegation contained above, as though fully set forth herein.

125. The Individual Defendants owe the Company fiduciary obligations. By reason of their fiduciary relationships, the Individual Defendants owed and owe the Company the highest obligation of good faith, fair dealing, loyalty, and due care.

126. The Individual Defendants violated and breached their fiduciary duties of care, loyalty, reasonable inquiry, and good faith.

127. The Individual Defendants engaged in a sustained and systematic failure to properly exercise their fiduciary duties. These actions could not have been a good faith exercise of prudent business judgment to protect and promote the Company's corporate interests.

128. As a direct and proximate result of the Individual Defendants' failure to fulfil their fiduciary obligations, the Company has sustained significant damages.

VERIFIED SHAREHOLDER DERIVATIVE COMPLAINT

As a result of the misconduct alleged herein, the Individual Defendants are liable to the Company.

129.    As a direct and proximate result of the Individual Defendants' breach of their fiduciary duties, the Company has suffered damage, not only monetarily, but also to its corporate image and goodwill.  Such damage includes, among other things, costs associated with defending securities lawsuits, severe damage to the share price of the Company, resulting in an increased cost of capital, the waste of corporate assets, and reputational harm.

## SECOND CAUSE OF ACTION

### (Against the Individual Defendants for Waste of Corporate Assets)

130.    Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

131.    The wrongful conduct alleged regarding the issuance of false and misleading statements was continuous, connected, and on-going throughout the Relevant Period.  It resulted in continuous, connected, and ongoing harm to the Company.

132.    As a result of the misconduct described above, the Individual Defendants wasted corporate assets by, *inter alia*: (i) paying excessive compensation and bonuses to certain of its executive officers; (ii) awarding self-interested stock options to certain officers and directors; and (iii) incurring potentially millions of dollars of legal liability and/or legal costs to defend the Individual Defendants' unlawful actions.

133.    As a result of the waste of corporate assets, the Individual Defendants are liable to the Company.

///

///

///

VERIFIED SHAREHOLDER DERIVATIVE COMPLAINT

## THIRD CAUSE OF ACTION

### (Against the Individual Defendants for Unjust Enrichment)

134.    Plaintiff incorporates by reference and realleges each and every allegation set forth above, as though fully set forth herein.

135.    By their wrongful acts, violations of law, and inaccurate and untruthful information and/or omissions of material fact that they made and/or caused to be made, the Individual Defendants were unjustly enriched at the expense of, and the detriment of, the Company.

136.    The Individual Defendants either benefitted financially from the improper conduct, or received bonuses, stock options, or similar compensation from the Company that was tied to the performance of the Company or its stock price or received compensation or other payments that were unjust in light of the Individual Defendants' bad faith conduct.

137.    Plaintiff, as a shareholder and representative of the Company seeks restitution from the Individual Defendants and seek an order from this Court disgorging all profits, including from the redemption of preferred stock, benefits, and other compensation, including any performance-based or valuation-based compensation, obtained by the Individual Defendants due to their wrongful conduct and breach of their fiduciary and contractual duties.

## FOURTH CAUSE OF ACTION

### (Against the Individual Defendants for Aiding and Abetting)

138.    Plaintiff incorporates by reference and realleges each and every allegation set forth above, as though fully set forth herein.

139.    The Director Defendants exploited, aided and abetted, and were knowing and culpable participants to the breaches of fiduciary duty by the Officer Defendants. Likewise, the Officer Defendants exploited, aided and abetted, and were

VERIFIED SHAREHOLDER DERIVATIVE COMPLAINT

knowing and culpable participants to the breaches of fiduciary duty by the Director Defendants.

140.   Specifically, the Director Defendants, in violation of the Company's corporate governance and state law, engaged in and/or permitted the Company to engage in the Mismanagement Misconduct, Related Party Misconduct, Promotional Misconduct, and the scheme to issue materially false and misleading statements to the public, including in the Company's SEC filings, and by facilitating and disguising the Officer Defendants' violations of law as alleged herein, and failing to report the same.

141.   The Officer Defendants, in violation of the Company's corporate governance and state law, engaged in and/or permitted the Officer Defendants' lack of oversight, engagement in the Mismanagement Misconduct, Related Party Misconduct, Promotional Misconduct, and the scheme to issue materially false and misleading statements to the Company's shareholders in investing public for their own benefit, by facilitating and disguising the Director Defendants' violations of law as alleged herein, and failing to report the same.

142.   As a result, the Director Defendants substantially assisted the Officer Defendants, and the Officer Defendants substantially assisted the Director Defendants in breaching their fiduciary duties and in committing the other wrongful and unlawful conduct as alleged herein.

143.   As a direct and proximate result of the aiding and abetting the breaches of fiduciary duty alleged herein, the Company has sustained and will continue to sustain significant damages.

144.   As a result of the misconduct alleged herein, the Individual Defendants are liable to the Company.

///

///

VERIFIED SHAREHOLDER DERIVATIVE COMPLAINT

# FIFTH CAUSE OF ACTION

## (Against Defendants Johnson, Walters-Hoffert, Scheiwe, and Dutt for Insider Trading)

145.  Plaintiff incorporates by reference and realleges each and every allegation set forth above, as though fully set forth herein.

146.  By reason of their fiduciary role as officers and directors of the Company, Defendants Johnson, Walters-Hoffert, Scheiwe, and Dutt (the "Insider Trading Defendants") specifically owed the Company the highest obligation of due care, good faith, and loyalty.

147.  As directors and/or officers of the Company, the Insider Trading Defendants were given access to material information about the Company, as described above, which was not generally available to the public.

148.  When the Insider Trading Defendants sold their Company stock, as detailed *supra*, they were in possession of material, non-public information described above and sold Company stock on the basis of such information for collective gross proceeds in excess of $1.4 million.

149.  The information described above was proprietary, non-public information concerning the Company's business operations and financial condition. It was a proprietary asset belonging to the Company, which the Insider Trading Defendants misappropriated to their own benefit when they sold holdings in Company stock.  The Insider Trading Defendants knew that this information was not intended to be available to the public. Had such information been generally available to the public, it would have significantly reduced the market price of Company stock.

150.  As the use of the Company's proprietary information for their own gain constitutes a breach of the Insider Trading Defendants' fiduciary duties, the Company is entitled to disgorge any illegal profits obtained thereby.

///

VERIFIED SHAREHOLDER DERIVATIVE COMPLAINT

## **REQUEST FOR RELIEF**

**WHEREFORE**, Plaintiff demands judgment as follows:

A.    Determining that this action is a proper derivative action maintainable under law, and that demand is excused;

B.    Awarding, against all the Individual Defendants and in favor of the Company, the damages sustained by the Company as a result of the Individual Defendants' breaches of their fiduciary duties, waste of corporate assets, unjust enrichment, and aiding and abetting;

C.    Awarding, against the Insider Trading Defendants and in favor of the Company, disgorgement of all illicitly gained profits from their insider trading;

D.    Directing the Company to take all necessary actions to reform and improve its corporate governance and internal procedures, to comply with the Company's existing governance obligations and all applicable laws and to protect the Company and its investors from a recurrence of the damaging events described herein;

E.    Awarding to Plaintiff the costs and disbursements of the action, including reasonable attorneys' fees, accountants' and experts' fees, costs, and expenses; and

F.    Granting such other and further relief as the Court deems just and proper.

///
///
///
///
///
///

VERIFIED SHAREHOLDER DERIVATIVE COMPLAINT

## JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.

DATED this 7th day of January 2025.

MATTHEW L. SHARP, LTD.

_____/s/ Matthew L. Sharp_____
Matthew L. Sharp, Ltd.
Nevada Bar No. 4746
432 Ridge Street
Reno, NV  89501
(775) 324-1500
matt@mattsharplaw.com

-in association with –

Thomas J. McKenna, Esq.
**GAINEY McKENNA & EGLESTON**
260 Madison Avenue, 22nd Floor
New York, NY 10016
Telephone: (212) 983-1300
Email: tjmckenna@gme-law.com

*Attorneys for Plaintiff*

VERIFIED SHAREHOLDER DERIVATIVE COMPLAINT

**<u>VERIFICATION</u>**

I, RONALD PEARL, declare that I have reviewed the Verified Shareholder Derivative Complaint ("Complaint") prepared on behalf of Flux Power Holdings, Inc. and authorize its filing. I have reviewed the allegations made in the Complaint, and to those allegations of which I have personal knowledge, I believe those allegations to be true. As to those allegations of which I do not have personal knowledge, I rely on my counsel and their investigation and for that reason believe them to be true.  I further declare that I am a current holder, and have been a holder, of Flux Power Holdings, Inc. common stock at all relevant times.

RONALD PEARL